NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER

**Electronically Filed
Intermediate Court of Appeals
CAAP-14-0000588
05-JUN-2015
08:17 AM**

NO. CAAP-14-0000588

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

DEREK ROBERT LEEK, Petitioner-Appellee, v.
DANIELLE ALINE FURTADO, Respondent-Appellant

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-P NO. 12-1-6214)

MEMORANDUM OPINION
(By: Nakamura, C.J., Foley and Fujise, JJ.)

Respondent-Appellant Danielle Aline Furtado (**Furtado**) appeals from the "Order Denying In Part the Motion To/For: Relief After Judgment or Order and Declaration," entered March 13, 2014 in the Family Court of the First Circuit[1] (**family court**).

On appeal, Furtado contends the family court erred in denying her January 24, 2014 "Motion for Relief After Judgment Or Order And Declaration" (**Motion for Relief**), requesting the family court suspend Petitioner-Appellee Derek Robert Leek's (**Leek**) visits with Furtado and Leek's child (**Child**) until he obtained a suitable residence.

I. BACKGROUND

Furtado and Leek have one child together, Child, born in 2012. On September 20, 2013, Furtado filed a petition for an order of protection against Leek, and the family court issued a temporary restraining order (**TRO**) prohibiting Leek from having contact with Furtado and Child.

On September 25, 2013, following a trial that took place on June 4 and 5, 2013, the family court entered a "Judgment

---

[1] The Honorable Matthew J. Viola presided.

of Paternity and Order"[2] (**Visitation Order**) regarding custody, visitation, and child support. The family court awarded Furtado: (1) sole legal custody of the Child, with specified exceptions, and (2) sole physical custody of the Child, subject to Leek's visitation rights. Specifically, the Visitation Order indicated that "[u]ntil Child is 6 years old, Child will visit [Leek] in the total calendar months of June, August, and December[.]" The Visitation Order also found that Leek had perpetrated domestic violence against Furtado.

Leek's primary employment is with the United States Department of Defense, but he uses a warehouse in the back of the Pearl City Industrial Park (**warehouse residence**) to live and operate his side business. For approximately two weeks in November 2013, notwithstanding the outstanding TRO, which had not yet been served on Leek, Furtado and Child stayed with Leek at his warehouse residence. Furtado claims that she and the Child only stayed at the warehouse residence in the evenings to sleep. On November 27, 2013, Leek asked Furtado to leave his residence.

On December 18, 2013, the family court held a hearing on Furtado's TRO against Leek, and dissolved the TRO due to insufficient evidence. Following the dissolution of the TRO, Leek had a visitation with the Child until December 31, 2013, with some of that visitation taking place in his warehouse residence.

On January 24, 2014, Furtado filed her Motion for Relief. In her motion, Furtado asserted that she "should be awarded sole legal and sole [p]hysical custody of the minor child of the parties; without any visitation to [Leek] until and unless he has a suitable environment to visit his daughter in." Furtado's Motion for Relief indicated that the family court should modify Leek's Visitation Order because he was "living in an unsafe warehouse."

On March 13, 2014, the family court held a hearing on Furtado's Motion for Relief. Both parties testified at the hearing. At the outset of the hearing, Furtado "clarified that she was not seeking a change in the [family] court's prior legal

---

[2] The Honorable Judge Frances Q.F. Wong presided.

2

and physical custody orders, but that she was only seeking a modification of the [Visitation Order]. Specifically, [Furtado] requested a court order suspending [Leek's] visits with the Child until he obtained a suitable residence for the visits to take place in. Alternatively, [Furtado] requested that if [Leek] did not have a suitable residence[,] that his visits occur in California, where he has family, or that he have supervised visits."

On March 13, 2014, the family court filed its "Order Denying In Part Motion To/For: Relief After Judgment or Order and Declaration" that provided:

> The Motion for Relief After Judgment or Order and Declaration (unfiled 1/16/14), by [Furtado] is denied insofar as there is no prohibition regarding [Leek's] visitation with [Child]. The existing visitation schedule shall remain in effect; however, the prior September 25, 2013 order is clarified as follows: [Leek's] monthly visits commence at 8:00 a.m. on the first day of the month and end at 8:00 a.m. on the last day of the month.

On March 20, 2014, Furtado filed a notice of appeal.

On April 15, 2014, the family court filed its written "Findings of Fact and Conclusions of Law" (**FOFs/COLs**). In the FOFs/COLs the family court found:

> 9. [Leek] lives in a warehouse in the back of the Pearl City Industrial Park located at 96-1354 Waihona Street, Pearl City. The warehouse is located in an area that is zoned for commercial use. [Leek] credibly testified that the owner of the warehouse is aware of and consents to [Leek] using the warehouse as his residence.

> 10. [Leek's] primary employment is with the United States Department of Defense, but he uses the warehouse space to operate his side business.

> 11. The warehouse consists of a 1,800 square foot bottom floor and an approximately 1,100 square foot mezzanine level, which [Leek] is refurbishing. The mezzanine level includes an approximately 850 square foot enclosed, air-conditioned space, where [Leek] lives. [Leek] credibly testified that this space includes a 12 foot by 24 foot enclosed bedroom and a bathroom. The bedroom has a dead bolt lock, which is keyed on both sides.

> 12. The Child stayed with [Leek] at his warehouse residence during part of December 2013, and [Leek] plans to have the Child stay with him there during the month-long visitations that he was awarded per the court's September 25, 2013 order.

> 13. [Furtado] testified that she believed that [Leek's] warehouse residence was an unsuitable and unsafe place for the Child to stay during [Leek's] visitation periods. [Furtado] identified a number of concerns about the condition, contents, and location of [Leek's] residence,

3

including: power tools, ladders, saws, and chemicals that were within the reach of the Child; a forklift that [Leek] allowed the Child to play·on; the bottom floor consisted of polished concrete; the flooring and stairway had exposed nails and the stairway had splintered wood and lacked a railing; an unfenced-off drainage ditch outside the warehouse; and other businesses adjoined [Leek's] warehouse space, including a stonecutting business that created a large amount of dust. Many of the conditions that concerned [Furtado] are depicted in [her] photos taken at the end of November 2013.

14. [Leek] credibly testified that a number of the concerns raised by [Furtado] have been addressed. For instance, he has disposed of some of the items that were outside of the warehouse. He has finished dry-walling and painting the 850 square foot living area in the mezzanine. The·plywood subflooring remains, but he intends to finish installing hardwood flooring within the next couple of weeks. The neighboring stonecutting business has moved out.

15. [Leek] also credibly testified that when the Child visits, he suspends all projects he is working on, puts away the items the Child can get into, and fills up the empty space with toys, where he and the Child play.

. . . .

21. [Leek's] residence is not an unsuitable place for visitation with the Child.

22. [Furtado] failed to prove by a preponderance of the evidence that the suspension of [Leek's] visitation with the Child was in the Child's best interest.

(Emphasis added.)

## II.  STANDARD OF REVIEW

The family court's FOFs are reviewed on appeal under the "clearly erroneous" standard. A FOF is clearly erroneous when (1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, the appellate court is nonetheless left with a definite and firm conviction that a mistake has been made. "Substantial evidence" is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.

On the other hand, the family court's COLs are reviewed on appeal de novo, under the right/wrong standard. COLs, consequently, are []not binding upon an appellate court and are freely reviewable for their correctness

. . . .

Moreover, the family court is given much leeway in its examination of the reports concerning a child's care, custody, and welfare, and its conclusions in this regard, if supported by the record and not clearly erroneous, must stand on appeal.

4

Fisher v. Fisher, 111 Hawai'i 41, 46, 137 P.3d 355, 360 (2006) (quoting In re Doe, 95 Hawai'i 183, 190, 20 P.3d 616, 623 (2001)).

## III. DISCUSSION

A. Findings of Fact (**FOFs**)

On appeal, Furtado challenges FOFs 9, 10, 12, 14, 15, 21, 22.

### 1. FOF 9

FOF 9 provides:

> 9. [Leek] lives in a warehouse in the back of the Pearl City Industrial Park located at 96-1354 Waihona Street, Pearl City. The warehouse is located in an area that is zoned for commercial use. [Leek] credibly testified that the owner of the warehouse is aware of and consents to [Leek] using the warehouse as his residence.

Furtado contends that this FOF is erroneous because "the area is zoned for Industrial use, not commercial use and zero copy of any lease allowing a family dwelling at this industrial warehouse was presented by [Leek]." A review of the record, however, reveals that during the March 13, 2014 hearing, both Furtado and Leek testified that Leek's warehouse was located in a "commercial zone." The family court found Leek's testimony credible and the record includes no evidence rebutting his testimony. "[I]t is well-settled that an appellate court will not pass upon issues dependent upon the credibility of witnesses and the weight of the evidence; this is the province of the trier of fact." Inoue v. Inoue, 118 Hawai'i 86, 101, 185 P.3d 834, 849 (App. 2008) (citation and internal quotation marks omitted). Furtado also has not shown that the distinction between industrial use and commercial use was material to the family court's decision. FOF 9 is not clearly erroneous.

### 2. FOF 10

FOF 10 provides "[Leek's] primary employment is with the United States Department of Defense, but he uses the warehouse space to operate his side business." Furtado contends that this FOF is erroneous because "[Leek] uses the warehouse as his residence, not just to operate a business."

The family court found in several of its FOFs that Leek lived in the warehouse and, in its FOFs/COLs, repeatedly referred

to the warehouse as Leek's "warehouse residence." Given that the family court found that Leek resides in the warehouse, it was not necessary for the court to reiterate that fact in FOF 10. See Rezentes v. Rezentes, 88 Hawai'i 200, 203, 965 P.2d 133, 136 (App. 1998) ("The trial judge is required to only make brief, definite, pertinent findings and conclusions upon the contested matters; there is no necessity for over-elaboration of detail or particularization of facts." (quoting Doe v. Roe, 5 Haw. App. 558, 565-66, 705 P.2d 535, 542 (1985))). FOF 10 is not clearly erroneous.

3. FOF 12

FOF 12 provides "The Child stayed with [Leek] at his warehouse residence during part of December 2013, and [Leek] plans to have the Child stay with him there during the month-long visitations that he was awarded per the court's September 25, 2013 order."

Furtado contends that this FOF is erroneous because "[t]here is insufficient evidence to support this Finding." However, Furtado testified during the hearing that the Child was with Leek in his warehouse for part of December 2013, but was not in the warehouse for Christmas because Leek went to California to visit his family. In addition, the family court's unchallenged FOF 20 indicates that "[f]ollowing the dissolution of the TRO, [Leek] had visitation with the Child until December 31, 2013. At least some of this visitation took place in his warehouse residence." FOF 12 is not clearly erroneous.

4. FOF 14

FOF 14 provides:

> 14. [Leek] credibly testified that a number of the concerns raised by [Furtado] have been addressed. For instance, he disposed of some of the items that were outside of the warehouse. He has finished dry-walling and painting the 850 square foot living area in the mezzanine. The plywood subflooring remains, but he intends to finish installing hardwood flooring within the next couple of weeks. The neighboring stonecutting business has moved out.

Furtado argues that FOF 14 is erroneous because it "implies that [Leek] has made the warehouse safe for his daughter, but this is contradicted by [Leek's] own testimony and his utter lack of photographic exhibits." In support of her

arguments, Furtado contends that "[Leek] admits he has plans on transforming his warehouse into a wonderful place for his daughter, but he agrees that this has not yet happened[.]"

The family court's FOF 14 does not state that Leek completed all of the intended renovations prior to the hearing, but that he had addressed "a number of the concerns raised" by Furtado. (Emphasis added.) At the hearing on Furtado's Motion for Relief, Leek testified that he removed "[a] lot of the stuff that was in the yard," put up drywall and painted the living area, and had plans to put hardwood on top of the plywood floor. Furthermore, Leek testified that the stonecutters, who worked next door to his warehouse residence, were no longer there. We decline to second-guess the family court's determination that Leek's testimony was credible. See Inoue, 118 Hawai'i at 101, 185 P.3d at 849. FOF 14 is not clearly erroneous.

5. FOF 15

FOF 15 provides "[Leek] also credibly testified that when the Child visits, he suspends all projects he is working on, puts away the items the Child can get into, and fills up the empty space with toys, where he and the Child play."

Furtado contends that this FOF is erroneous because "[t]here is insufficient evidence to support this finding." Furtado contends that FOF 15 "impl[ies] that the child has spent time alone with [Leek] at the warehouse, but the evidence presented to the court does not support these findings."

Leek testified that when the Child visits he puts his projects away and fills the space in his warehouse residence with toys. The family court found Leek's testimony credible. We will not second-guess the family court's credibility determination. See Inoue, 118 Hawai'i at 101, 185 P.3d at 849. FOF 15 is not clearly erroneous.

6. FOF 21 and 22

FOF 21 provides "[Leek's] residence is not an unsuitable place for visitation with the Child." FOF 22 provides "[Furtado] failed to prove by a preponderance of the evidence that the suspension of [Leek's] visitation with Child was in the Child's best interest."

7

On appeal, Furtado challenges both FOFs and contends that "[t]he biggest error the [family] court committed was to find that [Leek's] residence is not an unsuitable place for visitation with the Child."

Hawaii Revised Statutes (**HRS**) § 571-46(a)(7) (Supp. 2014) provides:

> **§571-46 Criteria and procedure in awarding custody and visitation; best interest of the child.** (a) . . . .
>
> (7)  Reasonable visitation rights shall be awarded to parents, grandparents, siblings, and any person interested in the welfare of the child in the discretion of the court, unless it is shown that rights of visitation are detrimental to the best interests of the child[.]

"Under HRS § 571-46, the sole issue in a custody determination is the child's best interests, which is an issue of ultimate fact." Fisher, 111 Hawai'i at 47, 137 P.3d at 361; See also Maeda v. Maeda, 8 Haw. App. 139, 143, 794 P.2d 268, 270 (1990).

Furtado believes Leek's warehouse residence is unsuitable and unsafe for the Child because of a number of conditions or concerns, including

> power tools, ladders, saws, and chemicals that were within the reach of the Child; a forklift that [Leek] allowed the Child to play on; the bottom floor consisted of polish concrete; the flooring and stairway had exposed nails and the stairway had splintered wood and lacked a railing; an unfenced-off drainage ditch outside the warehouse; and other businesses adjoined [sic] [Leek's] warehouse space, including a stonecutting business that created a large amount of dust.

The family court found Leek's testimony that a number of the concerns raised by Furtado had been addressed before the March 13, 2014 hearing commenced to be credible. For example, the family court found Leek's testimony that he "disposed of some of the items that were outside of the warehouse[;]" that he "finished dry-walling and painting" the living space; that the "neighboring stonecutting business ha[d] moved out[;] and that he "suspends all projects he is working on" and "puts away the items the Child can get into" when the Child visits, all to be credible.

Although Furtado presented evidence as to the state of the warehouse residence when she was last there in November 2013, she admitted at the March 13, 2014 hearing that she did not have

8

personal knowledge as to the current state of the residence. Given that the family court found Leek's testimony credible and given that Furtado failed to present evidence rebutting Leek's testimony, the family court's FOF 21 and FOF 22 were not clearly erroneous.

B.  History of Family Violence

Furtado seeks to modify her Visitation Order so as to limit Leek's visitation with Child to an "actual residence," claiming that, pursuant to HRS § 571-46(a)(9),[3] there is a presumption against Leek's visitation rights with the Child due to his history of violence.  Furtado contends that, because of Leek's history of violence against her, the family court was required to "consider as the primary factor the safety and well-being of the child and the parent who is the victim of family

---

[3]    HRS § 571-46(a)(9) provides:

§571-46 **Criteria and procedure in awarding custody and visitation; best interest of the child.** (a) . . . .

(9)    In every proceeding where there is at issue a dispute as to the custody of a child, <u>a determination by the court that family violence has been committed by a parent raises a rebuttable presumption that it is detrimental to the child and not in the best interest of the child to be placed in sole custody, joint legal custody, or joint physical custody with the perpetrator of family violence</u>.  In addition to other factors that a court shall consider in a proceeding in which the custody of a child or visitation by a parent is at issue, and in which the court has made a finding of family violence by a parent:

(A)    The court shall consider as the primary factor the safety and well-being of the child and of the parent who is the victim of family violence;

(B)    The court shall consider the perpetrator's history of causing physical harm, bodily injury, or assault or causing reasonable fear of physical harm, bodily injury, or assault to another person; and

(C)    If a parent is absent or relocates because of an act of family violence by the other parent, the absence or relocation shall not be a factor that weighs against the parent in determining custody or visitation[.]

(Emphasis added.)

9

violence." Furtado appears to argue that her "inability to protect her child from the dangers associated with living in an unsafe warehouse in an industrial complex is causing her to feel terrified[,]" which is disruptive to her and, thus, not in the best interest of the Child under HRS § 571-46(a)(9).

The family court found in its Visitation Order that Leek had perpetrated domestic violence against Furtado in the past, but still determined that it was in the best interest of the Child to visit with Leek for the months of June, August, and December, until she turns six years old. Furtado did not appeal the Visitation Order, but instead, sought to modify it through her Motion for Relief.

This court has held "[t]hat a person seeking a change of custody must show a material change of circumstances since the previous custody order, and must show that such a change of custody is in the best interest of the child." Nadeau v. Nadeau, 10 Haw. App. 111, 121, 861 P.2d 754, 759 (1993); See In re Guardianship of Doe, 93 Hawai'i 374, 388, 4 P.3d 508, 522 (App. 2000) ("A person seeking a change in visitation must show a material change in circumstances since the previous visitation order."). Furtado does not allege instances of family violence occurred after the court filed its Visitation Order so as to warrant modifying the family court's original Visitation Order. See Nadeau, 10 Haw. App. at 121, 861 P.2d at 759.

C. Legality of Living Arrangement

Furtado contends the family court erred in its FOFs/COLs because the court "never made any Conclusions as to the legality of [Leek] living in an I-1 zoned area."

Furtado argues that Leek's living arrangement is illegal and that the illegal nature of Leek's living arrangement creates an unsafe environment for the Child. Furtado failed to raise this argument below and cites to facts not found within the record to support her argument on appeal. A review of the record indicates that Furtado's arguments during the hearing focused on specific concerns about the location and condition of Leek's warehouse residence, not on the alleged illegality of Leek's living arrangement. Furtado waived her argument regarding the

legality of Leek's living arrangement by failing to raise that argument before the family court.

## IV.   CONCLUSION

Therefore, the "Order Denying in Part the Motion To/For: Relief After Judgment or Order and Declaration," entered March 13, 2014 in the Family Court of the First Circuit is affirmed.

DATED:   Honolulu, Hawai'i, June 5, 2015.

On the briefs:

Michael A. Glenn
for Respondent-Appellant.

Thomas D. Farrell
J. Alberto Montalbano
(Farrell & Associates)
for Petitioner-Appellee.

Chief Judge

Associate Judge

Associate Judge

11